Control and the Attorney General of New Jersey. Is the Council ready? Yes, Your Honor. May it please the Court, I am James Tanford for the Plaintiffs and I've requested three minutes for rebuttal. We are challenging one discriminatory feature of New Jersey alcoholic laws. Out-of-state retailers are prohibited from selling wine online and shipping it to consumers where in-state retails are allowed freely to do so. There's no real genuine dispute that this is discriminatory. The District Court did not find it was discriminatory though, did it? Let's face it, it was not facially discriminatory? I'm sorry? The District Court did not find that it was facially discriminatory, am I wrong about that? Yes, but the standard under the Commerce Clause for discrimination is discriminatory effect, not facial discrimination. But I think that the main dispute between the parties has to do with whether or not the state has justified the need to discriminate against out-of-state retailers. You started in your intro sentence by saying that there's one issue in the case. As I read the briefs, I thought there was two. I thought there was two provisions of the New Jersey regulatory regime that came under attack. The first was the purchase from a New Jersey wholesaler requirement, and the second was the physical presence requirement. And I thought, as I understood the briefing, that you needed to win both in order to have standing. What I said was a discriminatory feature, and I believe that that feature, which is the in-state presence rule, they apply it both to the retailer and the wholesaler have to be in-state presence, have to have an in-state presence. That is, they are combined in the notion of they are discriminatory effect. But it seems strange. I don't think that your client has standing to challenge the in-state wholesaler requirement. It strikes me that your client would have standing at most to challenge the in-state retailer requirement and then the requirement that retailers purchase from wholesalers. And I understood that those were the two angles of attack. You leaned into one, physical presence, much, much, much more than the other. Well, our client is a New York retailer and the person who owns it, and he's required by New York law to get his wine from New York sources, whereas New Jersey retailers are required to get theirs from New Jersey sources. So if we uphold the New Jersey requirement on purchasing from a New Jersey wholesaler, then it seems that there's nothing for us to redress with respect to physical presence because your client would not be able to sell wine as a retailer in New Jersey since it's required under New York law to purchase from a New York wholesaler. I think that's correct. But it has been a sort of a consistent principle articulated most recently in the Harvard Affirmative Action case by the court that a state cannot constitutionally do indirectly that which is prohibited from doing directly. If it is unconstitutional to deny an out-of-state retailer the ability to get a license and sell into New Jersey consumers, then to apply this requirement would continue that exact same prohibition, which is the inability to sell into New Jersey. Fundamentally, why should we deviate, as it were, from three other circuits that have found this sort of regulation constitutional? What is the state's evidence that it needs to prohibit? So what do you make of the state's evidence? We have the affidavits. Yes, and there's a first circuit, AMBAR, as well, that's gone the other way. So there's not a consensus among the other circuits. In terms of their, what they have, part of it is defining exactly what the question is. Okay, let's focus on the question we just asked by Director Strapwell about the evidence in this case. It seems to me if the evidence is sufficient under Clause 2 of the 21st Amendment, that pretty much does away with all the other arguments, which absent that would be pretty formidable. But let's focus on the evidence here. The question is, is the evidence sufficient to do what? And that was what I was going to say. In other words, what they have said in, what this court said in Freeman, and what they've said in Granholm and Tennessee Wine, is that evidence of general scope, that is, that regulatory accountability is made easier by an in-state presence, is not sufficient to justify discrimination. And that's the evidence that they have. They have evidence, the evidence they have presented primarily is, we can inspect the physical premises of in-state retailers. But they've also said that they will refuse access in New York. No, they refused, New York did not give them consent, did not agree in one case to assist them. We don't know any of the details in that case. They didn't offer any of the details of that case. We don't know anything about it other than that one superficial statement. But what other states have done is that you can require as a condition to a license. Our client is not seeking to sell into New Jersey without a license. It wants a license to sell, and you can condition that license on consent to jurisdiction. That's what other states do, and then the second question... You want a permit to sell, and maybe that ends up being the same as a license. And they're saying that in order for them to satisfy the regulatory and public health objectives, not just regulatory, but public health concerns that they have, it would be virtually impossible to enforce those given the kind of permit system that you're asking for. What's wrong with that? They haven't articulated a particular public health and safety interest, a reason. What's the threat? I think a little bit what they're doing is... When I read the case law, there's one zinger of a quote, and it gets played a lot, which is the three-tier system is unquestionably legit. And so doesn't the argument start from the fact that one of the requirements is that New Jersey retailers purchase from New Jersey licensed wholesalers? That's part of the three-tier system. Your client wants to sell into New Jersey while purchasing from a New York wholesaler. So the inspection concerns arise even greater when New Jersey cannot inspect the wholesaler that's in New York, and then it has a problem inspecting the retailer that would be in New York. So it strikes me that there's a real removal of two of the three prongs of this system. It's a zinger of a language. Your brief has muted it a bit, but the unquestionably legitimate three-tier system. But that's not what the court said. The unquestionably three-tier system was a statement in a plurality decision. Later adopted. No, Tennessee Wine corrected that, Your Honor. Tennessee Wine said that reads too much into Granholm. They said the fact that the system is presumptively legitimate does not immunize individual discriminatory features. And what we're saying is the district court saw this as a challenge to the overall system. But I guess what I'm saying is it strikes me that one of the requirements of the three-tier system is to purchase from an in-state licensed wholesaler. And so, yes, I get Tennessee Wine backed off from attenuated parts of the three-tier system, but that one's locked in. And that one strikes me is your client, if they can sell into New Jersey, would never comply with prong two of the three-tier system. Isn't that a problem? And they would never comply with the prong that says they have to be physically located in New Jersey. Both are discriminatory, one on its face and one in effect. And what Tennessee Wine said is that an individual feature cannot be discriminatory. And Granholm and the whole history of discrimination under the Commerce Clause is that discrimination is a question of practical effect, not just facial, the face of law. And the practical effect of imposing the in-state requirement is to continue to exclude out-of-state retailers so that they have to justify why is it important to public health and safety to buy from an in-state wholesaler. All discrimination turns back to do you have similarly situated comparables? And here it strikes me that the comparables are your client licensed in New York and purchasing from New York licensed wholesalers, and then New Jersey licensed entities purchasing from New Jersey licensed wholesalers. Isn't the fact that they're under two different regimes enough to sit there and say they aren't similarly situated? Or are we only looking at similarly situated in terms of economic burden? Similarly situated, first of all, in this court's earlier decision in Tremendous Corzine, one of the disputes was on the ability to transport back into New Jersey a quantity of wine purchased at a retailer in New York City. And that court, Granholm and Granholm, had no difficulty deciding that an out-of-state entity regulated by its state was similarly situated. And that seems to bring to the forefront the focus on Clause 2, which really was not discussed in Granholm, really wasn't a big consideration in Economic Corzine, Freeman, whichever you want to call it. But maybe I'm missing your argument, because I understand your argument. Your argument is not so much whether or not the 3-2 system is valid or invalid. Your argument is that the Grooming and Commerce Clause prevents the restrictions that are placed upon you now, whether it's a 3-2 system, a 1-2 system, a 2-2 system, or a 0-2 system, that you've been discriminated against in violation of the Grooming and Commerce Clause. That's right. It turns a lot on that phrase in Tennessee Wine that says the overall legitimacy of the 3-2 system doesn't protect individual discriminatory features. And the requirement that you must purchase from an in-state wholesaler is a discriminatory feature in effect, because it excludes every out-of-state business. It continues to keep trade barriers around the state of New Jersey, which doesn't mean it's unconstitutional, but it means it kicks over to the second part of Granholm and Freeman and Tennessee Wine, which is can they prove, do they have concrete evidence that the in-state wholesaler requirement is reasonably necessary to protect against some specific public health and safety threat? And given that they allow wineries to bypass wholesalers and sell directly to consumers and retailers, I don't see how they can claim that going through an in-state wholesaler is absolutely required, because they don't even require it in some situations. So are you asking us to reverse the district court or send it back for a more robust analysis, we'll say, with respect to the reasons they've proffered? This court can, since some way judgment is decided de novo, this court can decide for itself, and this case has been going since 2019. So I suppose our preferences would be, obviously this court's decided, reverse it and decide in our favor, but I can understand why... Is that on the record we have? Yes, I think so, because the record shows from them they've got no concrete evidence that these restrictions protect against a particular... We've got this appointment with Captain David. This appointment... The Deputy Attorney General is out for David. Yeah, he talks all about, he does two things. One is he talks, the facts that he presents are the facts of all the inspections that they do on the in-state premises. He doesn't connect a single one of those, and he doesn't say a single thing that they have ever conducted an inspection or enforcement activity directed to online sales and home delivery. That's what this case is about. It's not about making sure that minors don't show up with a fake ID on the premises of an in-state retailer. It's about online sales and direct shipping, and there's not a thing in Sopolnik's affidavit that addresses that. And he offers a number of opinions, personal opinions, that this is some kind of danger, but opinions without... I mean, both Gray and Hong, all the cases have said opinions without supporting facts are not adequate on summary judgment, and they're not even... Probably not. He's not an expert. He can't give opinions about broad social issues. He can talk about his own personal experience, and of course he doesn't claim to have any experience with the effects of direct shipping from out-of-state retailers. If you take a look at paragraphs 26 and 27 of his affidavit, he goes into some details and issues, we'll call it, that New Jersey's had with the New York State Liquor Authority and their lack of cooperation. Isn't that enough? I don't think so because that doesn't go... We still don't know that there's a public health and safety issue. It's talking about regulatory accountability in general, and Gray and Hong was very specific that regulatory accountability in general is not justification for a total ban because it can be solved through less discriminatory methods, a permit system. If they had required that New York... If they'd issued them a permit and required them to consent to jurisdiction and threatened to revoke their sales ability in New Jersey, they wouldn't have had any problems. Thank you. My time has expired. Good afternoon, Ms. Fleming. Good afternoon. May it please the Court. Under the Tennessee wine framework, New Jersey's physical presence and wholesaler purchase requirements are constitutional on two separate grounds, each of which provides this Court independently sufficient basis to affirm. First, neither requirement discriminates against out-of-state interests. Rather, each applies even-handedly to all would-be New Jersey retailers. And to be clear, if these laws are non-discriminatory... The district court said it has a discriminatory impact or effect, not that it discriminates on its face. Would you agree that it does burden New York's... We do not agree with the district court's conclusion there. The district court quoted Granholm for the proposition that these regulations would drive up the cost of wine for out-of-state retailers. But here, unlike the regulation in Granholm, which discriminated because the out-of-state wineries had to pass through the three-tier system, but the in-state wineries didn't, here the law applies even-handedly to all would-be retailers. But they have to establish a residence, a brick-and-mortar residence, which is different than Granholm. You have to establish a brick-and-mortar presence in New Jersey under your system, don't you? That's correct, but... Is there a cost associated with that? So any cost that would be borne by the retailer would be borne by a resident of New Jersey, too. So if you have two retailers... A resident of New Jersey, i.e. a resident, is already there. But the cost... They would have to pay more for the wine. So I think that... Nobody's going to absorb the cost. So I think that both in-state and out-of-state retailers would have to spend the same cost to open their store, purchase from a New Jersey wholesaler, and start their business. Now, it may be the case that someone in New York might have to drive ten minutes longer to their storefront. But this court's decision in Tolchan v. Supreme Court of New Jersey upheld its nondiscriminatory New Jersey court rules that required attorneys to... Those were CLE requirements. I can't think of anything more different than Tolchan in the cases before us here. It was totally, totally different. So in that case, it was a CLE requirement and also a bonafide office requirement in the state. And so there, even though it might be slightly easier for someone from New Jersey to open their office in the state, that was not cognizable as discriminatory. Let me go to this group right here. I'm concerned about the evidentiary standard here. Didn't going to Greenholme require concrete record evidence? And what concrete record evidence is there here other than, or rather I think speculative, affidavit from the Deputy Attorney General? Talking about all kinds of evils of alcohol. Almost sounds like one of those old... Well, I won't get into that. There are a lot of generalizations in there about the evils of alcohol.  So to take a step back, even if these laws were discriminatory, they're constitutional both because they're essential features of the three-tier system and because the state provided concrete evidence that they further... Where's the concrete evidence? Sure. So the evidence shows that... Identify for us. So this opponent's declaration has identified prosecutions of cases that have been had, inspections that have been done, sting operations that they've been able to do because they've been able to make unannounced visits on these physical premises. Recalls of contaminated products have been identified. Isn't that different than any other item put in this team of comrades? Sausage. Have a nose. If there's anything that ought to be inspected, it's what's in it. It's sausage. But you don't have the same kind of regulatory scheme for the folks at Jimmy Dean. Do we want to sell their sausage in New Jersey? Maybe you do. So the Supreme Court in Tennessee line has said that because of the 21st Amendment and the leeway that is given to states to fashion a scheme that promotes their health and safety interests that are specific to that state... Which is specific to alcohol also, isn't it? And specific to alcohol. That's exactly right. Help me understand why the things that the Deputy Attorney General seems concerned about with alcohol shouldn't be applied to everything else that has the potential to be a contaminant put into the team of comrades, like sausage, for example. I think the different inquiry that the Tennessee line framework shows is it comes from the history of alcohol in this country. And so the Tide House problems that occurred pre-prohibition... I know that in some of the meek histories, one of them is very helpful with the history. The District Court gets into history here. We're all familiar with the history of nothing else as well as in television. And that doesn't help me. It seems to me that what Greenholm and what we're concerned about in Korzine or Freeman and the Supreme Court was concerned about in Tennessee lines was the specific potential of alcohol to perpetuate social evils, if you will. Separate and apart from everything else. And that's why the prohibition was enacted. That was the focus of the 21st Amendment, reversing prohibition. It seems to me that the concrete record evidence has to deal with something other than the general social desire of ensuring the integrity of goods in commerce. It's got to deal with something unique to alcohol. That's correct. And I think the Supreme Court in Tennessee line is helpful in explaining why the physical premises requirement, unlike the residency requirement, allows the state to inspect these physical premises to prevent those kinds of problems. On inspection, you know, it strikes me that if you want to inspect a normal retailer, you can catch them by surprise. Oh, the ABC agents are coming. You know, you can look for – there might be value to a physical inspection. But if someone's just shipping in from out of state, it almost strikes me that inspection is easier. You just place an order, buy a dummy 17-year-old, see if they send it. You place another order. You get the wine. You can say, oh, my goodness, it's way under what it's labeled. It's mislabeled. It's all this other stuff. If they're going to be willing to send it into state, it strikes me that inspection is almost easier than kind of a surprise sneak attack. Just place an order, see what shows up. You've got your inspection. And so your opponent comes and says, hey, we aren't seeing any evidence of inspection vis-à-vis home delivery, vis-à-vis online wine sales because it strikes me that if you wanted to find out, are they selling a bogus product related to alcohol? The proof is advertised at 80 and it's 40, that wine maybe, a fortified wine maybe. You know, we're going to find out real fast. And so you can still do that just fine and then take away the license afterwards. You don't need a physical presence to place some online orders, see what you get in return, and then inspect it, find out that it's no good, and revoke the license. There's no physical presence requirement there. So I think there's a few things that make New Jersey's physical presence requirement important. So first, all of the inventory that the retailer sells, even if it's online, even if it's, you know, nobody ever comes into the store, has to be there on the premises. And so for that reason, the division can come and see if they're purchasing alcohol from us. But that's putting the rabbit in the hat. You're saying that the system is valid because it is the system. I don't understand what you're saying by it has to be there on the premises. So a retailer has to have the inventory that they're selling to New Jersey consumers. They have to store it there on their physical premises at the top to their license. Under the current system. Correct. They're challenging the current system, saying it's unnecessary. So if there were no, you know, storefront requirement, then that inventory wouldn't be purchased from a wholesaler. It wouldn't be on a place where New Jersey has it. So here's a person who's doing the ordering and gets it. What does it matter whether it's in a store or in a warehouse in New Jersey or coming from some producer shipping it in from Illinois or from a warehouse in Manhattan? So I think one of the important reasons that New Jersey needs this inventory and these documents to be in the state is because their oversight abilities would be particularly diminished. Oversight for what? What are they looking at? Oversight over the products that are being sold, the alcohol that's being sold. Why not just place the order and see what the product shows up as? He's trying to save you money and effort. Just place an online order. Get the bottle of wine. Find out if it's mislabeled, if it was sent to underage minors, if there's any problem of adulteration or otherwise. You don't need a bunch of agents. You don't need to raid. You don't need to look for, you know, round up everyone, see who's underage drinking, who's not. Just place an online order. You get the towel and wine and we have them sampling it. Is this consistent with your understanding of what this package should taste like? I mean, it seems that you need some degree of concrete evidence that if you're going to say that we need to inspect, it seems that you need concrete evidence that inspection is the only way you can do this. Otherwise, it feels that you've isolated, you've shrunk the nature of the state interest so that you can say, because it's so small, this is the only way we can do that small task. But you can do inspections a lot of other ways other than just show up unannounced, especially online. So if the state wasn't able to actually come on to the property, I think it would be, by the time it reaches the consumer, it would be too late. They would already have the contaminated product. I think it's too late to prevent consumers from getting contaminated products or from, you know, underage. Can you say that New Jersey out-of-state wineries can ship directly to the consumer? They can. How do you reconcile that, your position with out-of-state wineries and out-of-state retailers? Sure. So I would first say that a growing number of courts in the Second, Fourth, Sixth, and Eighth Circuits have upheld the physical premises requirement, even though those states also have this limited winery exception. And as the Fourth Circuit put it in B-21 Wines, the 21st Amendment is not an either-or proposition. It gives each state leeway in choosing the alcohol-related public health and safety measures that its citizens desire. And just to talk about desire, that's a different issue. We're talking about a political consideration and a policy consideration, not a legal one or a constitutional requirement. So we're not concerned about trying to get New Jersey in a position where it can satisfy the desires of its citizens. We're concerned with whether or not this racially discriminatory scheme that you have is consistent with the 21st Amendment specifically allows it. That's what we're concerned with. So I think what the court was talking about there was that the 21st Amendment gives each legislature, each state's legislature, the right to decide how best to fashion a regulatory scheme, and so the people decide through their legislature in that way. But then it makes clear that the Dermot Cummings Clause was not repealed by the second clause of the second article of the 21st Amendment. That's correct. And so if a law discriminates either on its face or in effect, then the state moves to the Tennessee wine part of the test and asks whether it can be justified as a public health and safety measure. But I would just like to say that you have the same concerns, right, all these public health and safety concerns from folks that are running wineries, that are shipping wine directly to New Jersey consumers, right? But they don't know how to do that. Yes, but the wine exception is very narrow and it's quite different from what's going on here. So wineries subject to this license, they have to produce 250,000 gallons or less per year, and they can only ship 12 cases or less of their wine to consumers. And that covers a very small number of small wineries. 12 cases or less to a given consumer? To any given consumer, correct. That's a hell of a lot of wine. But also, a few other things make wineries different. So first, they're also federally regulated, so they have to comply with federal regulations. And if they don't, then they can't ship wine anywhere. We don't have that for- They have to comply? There's no federal regulation that regulates wine and liquor retailers. So it's really up to the state to- You're saying if a liquor retailer wants to ship liquor across interstate lines, there's no federal limitation or federal regulation of that activity? Correct. Correct. So in that way, it's different. And then also, a liquor and wine retailer, they're obtaining their alcohol from hundreds of different sources. And so for that reason, there's more of a risk of contamination or fraud or those kind of risks that the state's trying to protect against, whereas the winery is just selling the wine that they've produced on their land, like with their grapes. And so the state feels that narrow exception. So that's a contamination issue, you're saying? The distinction there is valid because there's more of a contamination issue with things that are not wine than there is with wine. That's one reason, but we also- There are 400,000 alcohol retailers across the country. And so if all of them were permitted to ship and sell into New Jersey without buying it from a New Jersey wholesaler and without maintaining a physical storefront, that would be a very heavy regulatory burden. How many wineries are there across the country? I'm not sure exactly how many wineries, but- If you're not sure how many wineries there are, then how can we attach any significance to the first number you gave us? I think just by the nature of what parameters are required under the law, it would cut out even larger wineries in California or Virginia that produce more than 250,000. What if there were more wineries or as many wineries nationally as there are distilleries? I'm sorry? What if there were as many or more wineries nationally than there are distilleries? I just don't know if there are or not. It would seem that you're right, but I don't know. I think that would be a separate question about distilleries, but I think that this regulation covers retailers of all sizes. They carry all different types of alcohol, including wine and liquor and other types of spirits, and so just the volume of those versus the very narrow definition of what these smaller wineries are. They're not similarly situated, and we think the risks that come with the wineries- What's the risk of contamination and adulteration? Risk of contamination and just ability to regulate as well. This then goes back to Chaz Pift's scenario. He's making it easy for you. He set up this thing operation. You just sit at your little computer at night, order a couple cases of a given product, and then have the lab test it when it comes in and see if that's consistent with what was advertised. In addition to underage drinking, the state also needs to be able to do unannounced inspections so that they can- But underage drinking you have in any of them, right? Because if you allow out-of-state wineries to ship and you still have a problem with our underage drinking, you don't know who's there to receive that case of wine if it's a whole case, when it's delivered to the consumer. I think the physical presence requirement allows the state to examine the documents of the retailer, too, so they can- Do those documents disappear when they cross state lines? No, but here they- So brick and mortar presence, the documents turn into ether? They don't exist? But in-state, they have to keep them on the premises. There's some exceptions for keeping them off the premises, but at a minimum, they have to have three months of invoices. They have to have their certificate. Why don't you just- I mean, the solution to that strikes me. You say, hey, look, we'd like to see the last three months. If you don't produce them, it's a condition on your license. We'll take your license away. I think they'd find a way, even if they were stored out-of-state, to produce the last three months and the other documents you request. If you dangle license revocation or suspension along the way, it strikes me as easier to just ask for it than to send agents in to go rifle through someone's files. Just say, we'd like this. You're sending it into-state. We're going to jam your license if you don't produce the last three months of inventory and transactions and stuff like this. The documents are probably kept on something that looks a lot like this. They're not paper anymore. They're-except I won't have a nice picture of my college entrance checkbook. It's certainly possible that they're kept on a computer, but if there's an out-of-state-if the retailer is operating out-of-state and they would have time to sanitize the documents, as the point declaration says. I mean, you know, like Granholm was really, really into tech savvy, right? Like it said, hey, look, we don't need-the need to do that's just not the same anymore. And it seems that, you know, that's probably true. And if someone wants to sanitize it, you know, I mean, there's all sorts of forensic-now, that might be costly for you, but there's all sorts of forensic examining you can do to make sure that, you know, it's dated right, that you've got the right batch number, all these things someone can do. It's not-Granholm seemed to suggest that, look, we don't live in the past anymore and technological innovations mean that the inspection justification really drops. It was pretty emphatic about that, I thought. Well, I think that the tenancy line made clear that the physical premises requirement does allow the state to inspect. And the court did that in distinguishing residency from physical presence and explaining why they're different and why the residency is not essential and the physical presence does serve these purposes. But we think it's the way that the state can ensure that the alcohol is purchased from a wholesaler, an in-state or a New Jersey-licensed wholesaler, they can make these unannounced inspections so that the retailer doesn't have time to, you know, review their documents and determine what they're going to hand over and, you know, inspect the actual inventory that they have. And so we think that the state would be unable to do that without having an in-state presence in addition to a lack of jurisdiction to go ahead and do that in other states. You're assuming that when you require a brick-and-mortar presence that all of the inventory is going to come from that facility, which I'm sure is not the case and you probably know this business better than I do. Yes, Your Honor, it does have to come from that place. Eventually, but I would assume, let's say a store, a particular store gets 10,000 orders in a given year. I can't imagine that it's going to always have available on-site all of the inventory that is ordered. It probably gets on the phone or goes online and orders it from someplace else, which satisfies your requirement as long as it comes from that brick-and-mortar facility. But the brick-and-mortar facility is probably getting it from a warehouse or a supplier that's out of state. There's a couple of things that allow the state to be able to inspect the inventory and track what's actually going out. First, the wholesalers have to have the product for 24 hours at rest in the state, and that provides one opportunity for the state to inspect it. Second, all sales have to be contained to the physical premises. A retailer could have a warehouse, but the actual inventory that's being sold, even if it's online, has to actually be sold from that physical premises. What could a warehouse say? If I have a very small brick-and-mortar facility, I've got a little mom-and-pop kind of operation, but it's a brick-and-mortar facility in New Jersey, and I'm doing incredible volume because I've got a warehouse located someplace else, California or New York or someplace else. That's okay if I understand the requirements and let me know if I'm wrong, but what you're saying is somehow that the stuff that I'm selling has to come from that brick-and-mortar facility as long as it's in that brick-and-mortar facility for 24 hours before it goes to the consumer, that's okay? The warehouse has to be in New Jersey, and the physical premises has to be in New Jersey. If you had, let's say, a large retailing shop, they can have a warehouse that they store their extra alcohol that they've gotten in, but they can't sell out of that warehouse. So the division always knows that any alcohol coming out of that retailer is coming from the physical premises, the storefront. It might not be the most efficient system, but efficiency is really not the goal. It's more to be able to oversee and ensure that the state knows what's actually being sold and going to consumers. Thank you. Thank you. Good afternoon. Good afternoon, Your Honors. Deborah Skakel, Fourth Intervenor Defendant at Police. First of all, going perhaps directly to Judge Phipps' inquiry, which seemed to be one that became universal, why isn't it sufficient to have essentially a sting operation with respect to online sales? Let's go back to what Tennessee Wine tells us, right? And what's being challenged here? It's the in-state retailer presence requirement. And Tennessee Wine tells us that the state can monitor the store's operation, the in-state retailer's operation, through on-site inspections, audits, and the like. And then Tennessee Wine goes on to say, and we need concrete evidence that you actually do that, that it actually is done. So that is the reason why Deputy Attorney General of the Enforcement Bureau's Olnick's affidavit was tailored the way it was. In other words, the New Jersey ABC maintains its responsibility to inspect on-site its New Jersey retailers, its licensed New Jersey retailers. The difficulty of saying, well, why can't you simply expand that, give a permit to every out-of-state retailer who wants it, and then just run a sting on those folks? The problem with that is twofold. One, it's extraordinarily difficult when you've got 400,000 retailers, right, to figure out who to run a sting on. Judge Phipps, I'm assuming what you mean is that run a sting on the folks who actually want a permit. If what you're saying is no, run a sting on any out-of-state retailer out there, that is a huge problem because it's extraordinarily wide net and it is not going to be efficient for the New Jersey ABC to be able to do that. And it also is turning on its head the notion of, well, give them a permit, and then you can inspect them online. The whole point of the in-state retailer presence was to make sure that those retailers are in-state for, among other things, the ability to do an on-site inspection. What are they inspecting for? I think we're getting – we may be losing the forest for the trees. And the kind of inquiry that you're talking about is only facilitated by the on-site requirement. What is it that you're interested in uncovering and finding out? Yes, Your Honor. First of all, bootleg product. And that ties back to the wholesaler requirement. That's true. Why is that unique to liquor? That's true for any consumable item sold in the state of New Jersey or any place else. But it is a particular – yes, Your Honor, but it is of a particular concern if it's bootleg because you do not know what the source of the product is. And one of the principal foundations of the three-tier system is making sure, right, that everything goes within the chain. Your sausage maker is not under a three-tier system. For better or for worse, as my middle one used to say, that three-tier system has three links in the chain. But his point is that you don't need the three-tier system. But you do insofar as – okay, so let's say you're going to blow up the three-tier system and you're going to allow out-of-state retailers to get a permit, just like you do with out-of-state wineries. Why doesn't that work? Ms. Fleming gave you some of the reasons why there are significant fundamental differences between out-of-state wineries and out-of-state retailers. But some of the other issues arise from appellants' own suggestions as to why this would be workable in their reply brief. For example, they say, okay, well, on-site inspections of out-of-state retailers, are they a strain on New Jersey ABC's resources to be able to accomplish that? Just pass the cost along of an on-site inspection to that out-of-state retailer. Well, forgive me, but that's a head scratcher. How is that going to work? An inspector from the New Jersey ABC is going to go out to some retailer in Washington State and charge him for the plane ticket, charge him for the room and board. It just is not workable, to use Freeman's phrase, from when they were analyzing, quote, reasonable alternatives. Another one, and this was raised earlier, well, just have as a condition to getting a permit that the out-of-state retailer has to agree consent to jurisdiction. Well, that goes one way, right? The retailer is purportedly agreeing to jurisdiction. But the retailer does not have the capability to then get local law enforcement in that other state to assist the New Jersey ABC in order to effectuate enforcement measures in that other state. And that's what we're talking about here. If it were as simple as saying, okay, out-of-state retailer, you have to come into the state in order for us to undertake some enforcement measures, that's a very different kettle of fish than saying we're trying to do an inspection or an investigation of an out-of-state retailer. And we can't do that ourselves as the New Jersey ABC. We need the assistance of New York local law enforcement. In Judge Fitts' notice, or Judge Spreco noted earlier, the New York State Liquor Authority basically said, sorry, not our job. Mr. Tanford objects, well, that was a vague description of what it was all about. No, it wasn't. It was an investigation of Wegmans. Wegmans is a retailer in both New York and New Jersey. And what New Jersey wanted to know was, okay, New York SLA, what are you doing with Wegmans? Because we need to figure out what we're going to be doing. No, no cooperation whatsoever. So speculation, it's speculation on the appellate part. There are representations here, at least in the briefing, that there are 41 states that do not have this kind of requirement for brick-and-mortar presence in the state in the three-tiered system. That may not be accurate. Or maybe I'm misremembering. If that's true, why then this rate of corbels unique to those states that don't have those kinds of requirements? Judge McKee, are we talking about allowing out-of-state wineries or out-of-state retailers to ship it? Well, take both.  Wineries is not a problem, I guess. Let's just say retailers. Okay, retailers. I'm with you. There, it's not 44. It's 14 maybe. Maybe it's 12. But whatever. Let's just assume it's 14 to the benefit of the appellant. Well, New Jersey is in the vast majority of states that do not allow it. And again, New Jersey does not have to have a race to the bottom in terms of what level of risk they are willing to assume on behalf of their citizens, particularly their minors, with respect to alcohol beverage products. That's not how it works under the three-tier system. Ms. Fleming noted that under Tennessee wine reiterated that each state has the authority and the leeway to figure out what it wants to do according to the preferences of its own citizens. And if New Jersey determines that no, we're going to allow out-of-state wineries to direct ship. And by the way, that does not blow up the three-tier system. It's an exception to the three-tier system. So the three-tier system remains, and the opinion in Freeman recognized that. It doesn't automatically become a two-tier system, but in any event, so you can maintain that regulation based on what level of risk does the New Jersey legislature want to assume? And therefore, what level of risk does New Jersey ABC have to enforce? That is why, that's at bottom why Tennessee wine echoed Granholm, and Freeman followed it, to say is there a legitimate state interest, including the protection of public health and safety? If I could, I've heard your position on kind of physical presence requirement, but it strikes me that in order to win, WEG has to get two provisions of New Jersey law to be invalid, physical presence, and then purchase from a New Jersey wholesaler. Do you have any thoughts on purchase from a New Jersey wholesaler? Because at least in asking your friend on the other side, I thought that was really just about as core as core comes to a three-tier system. And if you have to win both, and that's as core as core comes to a three-tier system, this interest and concern about concrete evidence, everything else like this, about physical presence is indeed interesting, but we've got to upstream stop. Do you have any thoughts on that? Yes, sir. And you're certainly not going to get any argument from me in terms of your assessment of that. But the bottom line is you look at each statute on its own, right? And here, Mr. Tanford interestingly and creatively tries to say, well, it's really not the in-state wholesaler purchase requirement so much. It's really the in-state wholesaler presence requirement. Well, tomato, tomato. I mean, there's still a requirement that New Jersey retailers have to purchase from New Jersey wholesalers. That absolutely is constitutional. And the reason that your Honor's instinct is correct, that that seems to be truly integral to the three-tier system, is because of the definition in North Dakota, which is echoed in Granholm, which is echoed in Freeman, right, that the state can, if it so chooses, require that liquor go through licensed in-state wholesaler. That very phrase is in that opinion. Now, Mr. Tanford says, and rightly so, it's dicta. But I believe I'm also quoting Mr. Tanford from a prior time I've been with him on one of these cases, that it's powerful dicta. So in that regard, you're absolutely correct that the plaintiff has to win on both. Mr. Tanford acknowledged that. So I don't think anybody is disagreeing with that. And I believe you are also correct that if he can't, then there's a significant redressability issue here. And that is reflected in the Day v. Henry case, which is actually up for oral argument. Mr. Tanford will be there, too, in the Ninth Circuit next month. And interestingly, and a slight aside, but appellants argue that Arizona is one of the states that allow out-of-state retail direct shipping without a problem, and therefore is a state that New Jersey should look to to emulate. Arizona is the subject of yet another lawsuit by Mr. Tanford. So it doesn't allow out-of-state retail direct shipping. In fact, it bans it. And that very ban is the subject of sort of a compatriot case to the one before the court. So, again, there's an issue here of what is it that we are supposed to be looking at. It's not this illusory notion of conflated presence. It's retailer in-state presence and wholesaler in-state purchase requirement. And if you don't get both of them, then you're out of wood. It's game, set, match for the appellees in that regard. One other thing I wanted to mention, Your Honors, in that the prior circuit court opinions that were briefly discussed, the LeBamoff opinion was not overruled by any means by the Sixth Circuit and Block. Block rightly said, look, what is being looked at in the Block case are the Ohio statutes. What was looked at in the LeBamoff case were the Michigan statutes. Now, the governing principles set forth in LeBamoff, Judge Sutton's Sixth Circuit opinion, are, yes, definitely governing. And it's precedent. But it is not dispositive. So you need to go through your cases and show us why the Ohio regulations, like the Michigan regulations, meet the Tennessee wine standard. And that makes perfect sense. Likewise, in the Anvar case, the issue was, well, did the judge district court engage with the evidence in the opinion? And the First Circuit felt that that was not the case, at least not evident from the text of the opinion itself. And it's now gone back on remand. That's not our situation here. Being very candid, that's my biggest concern here. Is the extent to which the district court engaged with the evidence in the language concrete, which appears in Tennessee wine, and I think it's in Granholm. And all we seem to have is the affidavit by Sipovic that I mentioned earlier, which a lot of that is just generality. And one could argue it's common sense assumptions. But I'm not sure that common sense assumptions is different than speculation or surmise. I'm afraid I don't disagree with that characterization of Mr. Sipovic's affidavit, Your Honor, simply because he cites an awful lot of very specific information in terms of what inspections were done, what investigations were done, what penalties were assessed, what it is they were looking for, right, why they did it, you know, to prevent bootleg product, and what turned up. Yes, they found product sitting in a retailer from an unauthorized source. Probably means they didn't get it from a New Jersey wholesaler, right? That's kind of circular, though, because he said he's arguing that that requirement in and of itself doesn't satisfy the kind of legitimate concern that is required. The fact it didn't come from a New Jersey wholesaler, if it's what it purports to be and it's not adulterated, doesn't matter. Yes. Why? Because that in-state wholesaler purchase requirement is a statute on the books of the ABC Code in New Jersey. Isn't that putting the rabbit in the hat? Doesn't that get us right back to the German Commerce Clause issue and whether or not the purpose of the three-tier regulatory scheme is solely protectionism? No. In fact, to the contrary. The statutes here are protecting, but they're protecting the public health and safety. They're not protecting the interests of the individual retailer or the individual wholesaler. They're burdening the individual retailer and individual wholesaler in New Jersey. To Judge Phipps' point, in effect, at the end of the day, if plaintiffs succeed, they will flip the table. In other words, they won't be subject to all of the burdens and regulations that an in-state New Jersey wholesaler would. Why? Because under their regime, they wouldn't have to buy from a New Jersey wholesaler. They wouldn't have to buy brand-registered product. They wouldn't have to be subject to product coming into the state and sitting for 24 hours. All of those precautionary measures. They wouldn't get a call from a New Jersey wholesaler saying, wait, do you have this Kim Crawford Cabernet? I'm going to come and pick it up because it's got a quality issue. None of that would be possible under the appellant's regime. Every one of those aspects shows you why it is not protectionist of the individual links in the three-tiers chain in New Jersey, but why it's protecting the public health and safety. That's what's going on here. Thank you. Okay. Thank you. I'm more confused about my 12 minutes. I first came up.  Oh, sure. Yes. Thank you. A couple of things. Initially, Ms. Cagle has mixed up Arizona and New Mexico. It's New Mexico that allows out-of-state retailers. Well, that may be the only thing she got wrong. And it's also protectionism. It's a question of effect, not intent. It can be intent. But the fact is, if everybody has to buy from a New Jersey wholesaler, it protects New Jersey wholesalers from competition from out-of-state wholesalers. If everyone has to buy from a New Jersey retailer for shipping, it protects them from competition. But you don't have standing, I don't think, to assert a New Jersey wholesaler claim, that the protection is angles for a New Jersey wholesaler because your client's not an out-of-state wholesaler. Well, I mean, I think that the... It doesn't apply to your client. Well, there's a question of standing and rightness. That is, it may indeed be that this is a bifurcated two-step piece of litigation, that once a license is issued to the wine cellarage, if the New Jersey SLA attempts to enforce the in-state wholesaler requirement, then that might be the point where that issue is ripe. Right now, they don't have a license. They are seeking a license. They are seeking into the New Jersey regulatory system. And if they impose that, they're still excluded. So I think that the discriminatory effect gives them standing, gives them responsibility. I mean, in terms of standing, you need a judicial court order that is going to grant your client the redress and relief that your client wants. And if we give an order that says the physical presence requirement is unconstitutional or inadequate, not supported by concrete evidence in this case, I don't know that that has any traction in terms of relief if the wholesale or the purchase from a New Jersey wholesale requirement is still in effect because your client has to purchase from a New York wholesaler by virtue of its residency or its presence in New York. Well, the core cases, Lou John, and the core cases on standing and on redressability have said that if one agency or one defendant is responsible for both provisions and is before the court, they can be enjoined from enforcing the core provision, and they can further be enjoined from enforcing even otherwise constitutional laws as applied to this situation to avoid them from evading a core judgment that this process is discriminatory. His paragraph on fairly traceable causation was pretty clear, and redressability comes after that. And it said that I don't know that that's a correct reading of Lou John, especially after Clapper and Spokio. We may disagree about that. I understand that. That's a pretty meaningful disagreement, though, because if we can't order any relief, even if physical presence isn't supported by concrete evidence, even if it's unconstitutional, you still can't sell in New Jersey unless you purchase from a New Jersey wholesaler, and if that provision is core to the three-tier system and is upheld, then there's no point in us having this conversation from an Article III perspective because it would be an advisory opinion. That's correct, but I believe that there's plenty of power in the district court in terms of an injunction as a matter of equity, not law. And there are cases that say the issue of remedy was not fully briefed in everything because of the way the district court resolved it. I think at a minimum this case has to be remanded on the question of remedy. Redressability is, of course, linked in with that, but the question is whether the court has the power to enjoin the defendants from requiring that an out-of-state retailer get its wine from an in-state wholesaler. Of course it does. It's a matter of equity and fairness. But standing is evaluated claim by claim. That's Lujan, and it's evaluated request for relief by request for relief. And so it strikes me that we would have to examine, in order for you to have standing and you have to win two claims and succeed on two requests for relief, one of the ways it is necessary for you to win, I think, is that the in-state wholesaler purchase requirement must be able to be invalidated constitutionally. It doesn't have to be invalidated constitutionally. They can say it's like no zones in front of a Planned Parenthood clinic or something where you enjoin someone from doing an otherwise perfectly lawful thing, which is walking down the sidewalk. The court has the equitable power to enjoin them from enforcing an otherwise perfectly valid law. And the fact that the in-state wholesale requirement is perfectly valid with respect to in-state retailers does not necessarily make it automatically valid. The courts have said over and over, no state alcohol law is automatically valid. That's what it said. Every feature must be evaluated on its own. So I don't think we submit that there is a redressability problem, because the question is whether the court has the power to do so. And it has the power to enjoin the defendant from engaging in an act which is normally lawful, but would be unlawful in this situation or unconstitutional in this situation. And if I may address just a couple of other things, point out two things. One is, much of the argument on inspections is contrived. Their same star witness said that in a three-year period, 75% of in-state retailers weren't inspected at all. It's not like they're going into these stores every day and checking. They respond once in a while. He also said that most monitoring in New Jersey is now done electronically. So the argument about the importance of in-state inspections is, first of all, exaggerated over the facts. They're talking about their opportunities. The law gives them the authority, but you look at the person in charge of enforcing it, and he goes, no, we don't do it very often, and we usually do it electronically. Yeah, but their countervailing argument, I imagine, is something to the chilling effect, that an entity knowing that there is a 25% chance that somebody may be uncovered would be enough, perhaps, to cause that entity to not engage in some antisocial conduct that it would otherwise engage in if there were no inspection, no risk of inspection, no risk of being caught. So the fact that it's only 25%, I'm not sure, it sounds persuasive, but that's probably true of every regulatory endeavor. It's not the person power to inspect 100% of the folks involved in a given industry. I probably expect to say, and also in this opponent affidavit is, is that there have been 3,000 violations in the last couple of years by New Jersey, so it's not chilling them very much. The fact is, this is a high-volume business. People come in, people buy things, they don't check everything. I think that there are going to be mistakes is inevitable when you're selling lots of product. What they have not done yet is they have yet to articulate a specific public health and safety risk. Tennessee Wine uses the phrase alcohol-related public health and safety risk. They have yet to articulate one. Granholm said regulatory accountability in general is not sufficient because that can be done through permits and electronics and other forms of, it said you've got to articulate a particular problem. It's not, they had nothing. They have speculation, fear that there will be increased consumption, fear, I mean the fact that a product is, for example, their one example, a can of Kim Crawford, which is a New Zealand company, they tried to produce wine and put it in cans. Turned out the cans tasted like tin, so they recalled it. This had nothing, no threat to public safety. And the evidence that we've, the National Institute of Health tracks consumption. There's been no increase in consumption in the 14 states that allow interstate direct shipping from retails. There's been no, the National Highway Traffic Administration, no increase in alcohol-involved traffic fatalities. There's no evidence of any increase in youth access. And if there were, the youths can just, they can already get online ordering and get it from an in-state retailer. So if there's any risk of online ordering and home shipment increases youth access, it's already there from wineries and in-state retailers. So they have yet to articulate a specific public health and safety risk that is posed, that is addressed by their inspections, inspections, inspections, and they never say what public, have you ever opened a bottle of wine and discovered that it was tainted? No, not a single time. Have they ever done a sting? Other states have. It's very easy to do a sting to see if an online retailer is shipping to kids. You just have a person pretend to be 17 and order it online and see if it's shipped. So the two most likely things, increase of consumption, youth access, or unsafe wine, they have not connected any of these inspections to solving, addressing that problem. And that has been the major thing, and one other sort of thing that I will shut up, which is there are 400,000 retailers. These 400,000 retailers are mostly convenience stores, grocery stores, pharmacies, in the states that actually allow, we have evidence of this, the states that actually allow out-of-state retailers to ship and get permits, fewer than 200 have gotten the licenses. Plus, if there were an overwhelming number of out-of-state shippers who wanted licenses, there's a simple solution, a quota system. This is what New Jersey already does to limit them, to prevent the proliferation of neighborhood retailers, brick-and-mortar retailers. It has a quota system. If you have a permit, you limit shipping to whatever they said, 12 cases a year. You require them to, you want to test for the safety of wine? Go online, order five bottles, and have them tested. They don't even test their own wine for safety. The whole argument seems contrived, and it boils back down to the statement, the perfectly clear statement in Graham-Ohm, which is that states cannot require an out-of-state firm to become a resident in order to compete on equal terms. Thank you. Thank all counsel for the briefs and the argument, and we'll take this case under review.